29397. MADDOX v. THE STATE.

NICHOLS, Chief Justice.

John H. Maddox was indicted, tried and convicted for the offense of selling marijuana. Challenges to the array of the grand and traverse jurors were made in which it was contended, among other things, that the provisions of the Act of 1967 (Ga. L. 1967, p. 725) contained in Code Ann. § 59-112 (d) which permits any woman who does not desire to serve upon juries to notify the jury commissioners of the county in which she resides in writing to that effect whereupon her name shall not be placed in a jury box for said county.

On the trial of the case the state introduced evidence of an undercover agent for the Georgia Bureau of Investigation that the defendant had sold him a substance which appeared to be marijuana. This officer also testified that shortly after the sale he placed the plastic bag containing what appeared to be marijuana in the trunk of the automobile in which he was riding where the same remained until he removed it some four hours later and locked it in his briefcase where it remained until he

delivered it to the State Crime Laboratory in Atlanta. The forensic scientist who identified the substance as marijuana testified that she received it from this undercover agent in the offices of the state crime laboratory.

1. The contention that the chain of possession of such substance was not proven so as to permit the introduction of evidence that it was marijuana is without merit, as is the contention that the trial court erred in refusing to direct a verdict of acquittal. The evidence authorized the verdict.

2. After the court completed its charge to the jury, counsel for the appellant objected because the court had not, without request, instructed the jury that their verdict must be unanimous. This failure to charge is enumerated as error. There was no written request, timely tendered, requesting such charge. See Code Ann. § 70-207 (b). Thus, the question presented is whether such charge is required in the absence of a request.

In *Fogarty v. State,* 80 Ga. 450, 454 (5 SE 782) it was said: "The 4th ground of the motion is, in substance, that the court refused to instruct the jury 'that each juror should decide for himself, upon his oath, what his verdict should be, and that no juror should yield his deliberate conscientious convictions as to what his verdict should be, either at the instance of a fellow-juror or of the majority; and that no juror should yield his honest convictions for the sake of unanimity or to avert the disaster of a mistrial.' We think the court's charge was sufficient upon this question when he charged the jury that 'each juror should decide for himself, upon his oath, as to what his verdict should be,' if indeed he should have instructed the jury upon that subject at all. The jurors are supposed to be intelligent, conscientious men; each takes the oath prescribed by law, 'that he will give a true verdict according to the evidence'; and he is presumed to understand the nature and effect of his obligation. Whether he can conscientiously yield his judgment to that of his fellow-jurors, is a question he must decide for himself. The charge requested was a virtual bid for a mistrial; for the effect would be to impress upon an obstinate juror never to yield to the argument or

reasoning of his fellow-jurors. The daily experience of our lives shows that such a charge would be erroneous. How often are the fixed and conscientious convictions of a sensible man changed by reason and argument. How foolish and absurd does a man appear when he announces that he never changes his opinions or convictions. The man who is willing to change his opinions and convictions upon reason and argument is the really reasonable man. This is so in the ordinary transactions of life; it is true as to courts, it is true as to jurors, and is true as to legislators.

"This court, in the case of *Smith v. The State,* 63 Ga. 170, held that 'the jury are to act as a body, and should be charged as a body. The individual jurors are not to be addressed in the charge in a way to discourage mental harmony and concert. It is not incumbent upon the court to stimulate their individuality by charging at the prisoner's written request, "that each juror must be satisfied for himself, from the evidence, of the guilt of the defendant, before he can lawfully agree to a verdict of guilty." ' We do not think, therefore, that the court erred in refusing the request set out in this ground of the motion."

The cases on this subject are not numerous and, while it is the practice of some trial courts to include an instruction that a verdict must be unanimous, no case has been cited from the appellate courts of this state; and we have found none where such a charge is mandatory. The court did instruct the jury that the form of their verdict should be "We the jury . . ." The charge instructed the jury as a group and was not directed at only one or two of them. The jury was not instructed that a majority or even 11 of the 12 members could speak for them all.

The defendant is in no danger of having a verdict returned against him which is less than unanimous in as much as he is entitled, as a matter of right, to timely make a motion to have the jury polled. In criminal cases the privilege of polling a jury is the legal right of the defendant, and does not depend upon the discretion of the court. *Tilton v. State,* 52 Ga. 478. See also *Williams v. State,* 63 Ga. 306; *Groves v. State,* 162 Ga. 161 (132 SE 769). Thus, where, as in the present case, there was no attempt on the part of the defendant to have the jury

polled so as to show that the jury was or was not unanimous in the verdict rendered results in a waiver of such right, and under such circumstances there can be no harmful error in failing to charge as contended for by the defendant here. Compare *Favors v. State,* 229 Ga. 398 (192 SE2d 161) and cases cited as to waiver. See also *Parks v. State,* 230 Ga. 157, 160 (195 SE2d 911).

3. The defendant attacked the constitutionality of Code Ann. § 59-112 (b) which permits women to be excluded from jury service merely by notifying the jury commissioner of the county in which they reside in writing to that effect. Such contention is without merit. Our statute, unlike the Louisiana statute, dealt with in Taylor v. Louisiana, — U. S. — (95 SC 692, 42 LE2d 690), does not automatically exclude women from jury service, but permits any woman who does not desire to serve to so notify the jury commissioner. The Georgia statute also provides: "If at any time it appears to the jury commissioners that the jury list so composed, is not a fairly representative cross-section of the intelligent and upright citizens of the county, they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of the significantly identifiable group in the county which may not be fairly representative thereon." Ga. L. 1968, p. 533; Ga. L. 1973, pp. 484, 485 (Code Ann. § 59-106).

The decision of the United States Supreme Court in Taylor held in part: "Accepting as we do, however, the view that the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from venires representative of the community, we think it is no longer tenable to hold that women as a class may be excluded or given automatic exemptions based solely on sex *if the consequence is that criminal jury venires are almost totally male."* (Emphasis supplied.) When considered with the entire scheme of selecting prospective jurors, the effect of the statute here attacked could not result in a jury almost totally male.

Did the jury selection procedures followed in Coweta County result in an unconstitutionally composed jury, either grand or traverse? In *State v. Gould,* 232 Ga. 844

(209 SE2d 312), this court affirmed the judgment of the Court of Appeals in *Gould v. State,* 131 Ga. App. 811 (207 SE2d 519), which set aside a defendant's conviction because of the systematic exclusion of women from both grand and petit juries. Other questions immaterial to this decision were affirmed in part and reversed in part. In that case, as in this case, the jury lists of Coweta County were under review. That case, however, dealt with a different year and the grand and traverse jury lists were not the same as in this case. The record in this case is not complete as to the percentage of males and females on the jury lists. As stated by the appellant in his brief: "Of those names identified on the grand jury list, only 21 percent are women. Of the names identified on the traverse jury lists, only 36 percent are women." When the names not identified as to sex on the grand jury list are included with those so identified, a total of over 33 percent could be female. As to the traverse jury, those identified as female represented 36 percent of the total number identified, yet the jury which tried the defendant contained seven men and five women. Under this record it cannot be said that the jury selection procedure resulted in an unconstitutionally composed jury, either grand or traverse. Accordingly, the judgment of the trial court overruling the defendant's challenges to the array of both of the grand and traverse juries must be affirmed.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs specially in the ruling made in Division 2, and Gunter and Ingram, JJ., who dissent from the ruling made in Division 2 and the judgment of affirmance.*

ARGUED NOVEMBER 13, 1974 — DECIDED FEBRUARY 18, 1975 — REHEARING DENIED MARCH 4, 1975.

*Farmer, Fanning & Porterfield, Millard C. Farmer, Jr., Amanda P. Porterfield,* for appellant.

*Eldridge W. Fleming, District Attorney, William F. Lee, Assistant District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley,* for appellee.