Samuel GIBSON, III, Plaintiff,

v.

George L. JACKSON, Individually and as Superior Court Judge of Jones County, Georgia, Butch Moore, Charles E. Baker, Jr., Nelson Chapman, Individually and in their capacity as Commissioners of Jones County Georgia, James Ricketts, Individually and in his capacity as Warden of the Georgia Diagnostic & Classification Center in Jackson, Georgia, George Busbee, Individually and in his capacity as Governor of the State of Georgia, Defendants.

Civ. A. No. 77–59–MAC.

United States District Court,
M. D. Georgia,
Macon Division.

Dec. 16, 1977.

Millard C. Farmer, Jr., Robert Altman, Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., G. Stephen Parker, Asst. Atty. Gen., State of Ga., Atlanta, Ga., for defendants.

OWENS, District Judge:

■ Constitutionally and legally the State of Georgia may execute persons who murder their fellow human beings provided that such persons have been constitutionally and legally tried and sentenced, *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and provided further that they have been afforded their "constitutional right of access to the courts to assert such procedural and substantive rights as may be available . . . under state and federal law. . . ." *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72, 86 (1977).

Plaintiff Samuel Gibson, III, an indigent, having been convicted in Jones County Superior Court of both murder and rape and sentenced to die and having lost his appeal of right [1] to the Supreme Court of Georgia, 236 Ga. 874, 226 S.E.2d 63 (1976), has petitioned the Butts County Superior Court for a writ of habeas corpus pursuant to a statutory scheme enacted by the legislature of this State.

Georgia's habeas corpus statute permits "any person imprisoned by virtue of a sentence imposed by a State court of record

---

1. See Ga.Code Ann. § 27–2537.

. . ." to file a petition in the Superior Court of the county in which he is imprisoned and in his petition to assert "that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Georgia or the laws of Georgia." The statute[2] itself is

2. Ga.Code Ann. § 50–127 as of the date of the offense in question provided:

"50–127 Exclusive procedure for suing out a writ of habeas corpus for persons whose liberty is being restrained by virtue of a sentence imposed against them by a State court of record.

Notwithstanding the other provisions of this Title, the following is the exclusive procedure for suing out a writ of habeas corpus for persons whose liberty is being restrained by virtue of a sentence imposed against them by a State court of record.

(1) Grounds for writ.—

Any person imprisoned by virtue of a sentence imposed by a State court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Georgia or the laws of the State of Georgia may institute a proceeding under this section. Rights conferred or secured by the Constitution of the United States shall not be deemed to have been waived unless it is shown that there was an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly and intelligently.

(2) Petition and verification.—

The petition shall identify the proceeding in which the petitioner was convicted, give the date of rendition of the final judgment complained of, and clearly set forth the respects in which petitioner's rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. The petition shall identify any previous proceedings that petitioner may have taken to secure relief from conviction. Argument and citations of authorities shall be omitted from the petition. The petition must be verified by the oath of the applicant or some other person in his behalf.

(3) Jurisdiction and venue.—

The petition must be filed in the superior court of the county wherein the petitioner is being detained. The superior courts of such counties have exclusive jurisdiction of habeas corpus actions arising under this section.

(4) Service of the petition.—

Service of the petition shall be made upon the person having custody of the petitioner. If the petitioner is being detained under the custody of the Board of Corrections, an additional copy of the petition shall be served on the Attorney General; however, if the petitioner is being detained under the custody of some other authority other than the Board of Corrections, an additional copy of the petition shall be served upon the solicitor general of the county wherein the petition is filed. Service upon the Attorney General or the solicitor general may be had by mailing a copy of the petition along with a proper certificate of service.

(5) Custody of petitioner.—

Custody and control of the petitioner shall be retained by the Board of Corrections or other authority having custody of the petitioner and it shall be the duty of such board or authority to produce the petitioner at such times and places as the court may direct.

(6) Proceedings on petition.—

Within 20 days after filing and docketing of the petition, or within such further time as the court may set, the respondent shall answer or move to dismiss the petition. The court shall set the case for a hearing on the issues within a reasonable time after the filing of defensive pleadings.

(7) Disposition in the trial court.—

The court may receive proof by depositions, oral testimony, or other evidence. If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgments or sentence in the former proceedings and such supplementary orders as to rearraignment, retrial, custody, bail or discharge as may be necessary and proper. Depositions may be taken under this section upon reasonable notice to the opposing party.

(8) Transcribing proceedings.—

All trials held under this section shall be transcribed by a court reporter designated by the superior court hearing the case.

(9) Judge's findings of fact and conclusions of law.—

After reviewing the pleadings and evidence offered at the trial of the case, the judge of the superior court hearing the case shall make written findings of fact and conclusions of law upon which the judgment is based. Such findings of fact and conclusions of law shall be recorded as part of the record of the case.

(10) Subsequent petitions—waiver of grounds not claimed.—

All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of the State of Georgia otherwise requires, or any judge to whom the petition is assigned, on considering a subsequent petition, finds

technical and difficult for judges and lawyers to apply. Major changes[3] effective

April 24, 1975, were enacted, 1975 Ga.Laws at 1143, making the statute even more diffi-

grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

(11) Practice as to appeals.——

Appeals in habeas corpus cases shall be governed by the Appellate Procedure Act of 1965 [§ 6–701 et seq.], as now or hereafter amended. In the event that the superior court finds in favor of the petitioner, a notice of appeal filed by the respondent shall act as a supersedeas and stay the judgment of the superior court until there is final adjudication by the appellate courts: Provided, however, that while such case is on appeal, the petitioner may be released on bail as is now provided for in criminal cases, except where the petitioner has been convicted of a capital felony: Provided, however, that the right to bail and the amount of bond shall be within the discretion of the judge of the superior court wherein the case is tried.

3. Paragraphs (1), (7) and (11) of Ga.Code Ann. § 50–127 were amended in their entirety to provide:

"(1) Grounds for Writ.—Any person imprisoned by virtue of a sentence imposed by a State court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Georgia or the laws of the State of Georgia may institute a proceeding under this Section. Except for objections relating to the composition of a grand or traverse jury, rights conferred or secured by the Constitution of the United States shall not be deemed to have been waived unless it is shown that there was an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly, and intelligently. The right to object to the composition of the grand or traverse jury will be deemed waived under this section, unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection after the conviction and sentence has otherwise become final."

"(7) Disposition in the Trial Court.—

(a) The court may receive proof by depositions, oral testimony, sworn affidavits, or other evidence.

(b) The taking of depositions or depositions upon written questions, by either party, shall be governed by the provisions of sections 26, 27, 28, 29, 30, 31, 32 and 37 of an Act to comprehensively and exhaustively revise, supersede and modernize pretrial, trial and post-trial procedures in civil cases, approved March 18, 1966 (Ga.L.1966, p. 609), as amended, particularly by an Act approved March 27, 1972 (Ga.L.1972, p. 510); provided, however, that the time allowed in section 31 of said Act for service of cross-questions upon all other par-

ties shall be ten days from the date the notice and written questions are served.

(c) If sworn affidavits are intended by either party to be introduced into evidence, the party intending to introduce the affidavit shall cause it to be served upon the opposing party at least five days in advance of the date set for a hearing in the case. The affidavit so served shall be accompanied by a notice of the party's intention to introduce it into evidence. The superior court judge considering the petition for writ of habeas corpus may resolve disputed issues of fact upon the basis of sworn affidavits standing by themselves.

(d) If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence challenged in the proceeding and such supplementary orders as to rearraignment, retrial, custody, or discharge as may be necessary and proper. In all cases the court shall dispose of the matter as law and justice require."

"(11) Practice as to Appeals.——

(a) Appeals in habeas corpus cases shall be governed by the Appellate Procedure Act of 1965, approved February 19, 1965 (Ga.Laws 1965, p. 18), as now or hereafter amended, except that as to final orders of the court which are adverse to the petitioner, no appeal shall be allowed unless a justice of the Supreme Court of Georgia shall issue a certificate of probable cause for such appeal.

(b) Within 30 days from the entry of the order denying relief to the petitioner, a written application for a certificate of probable cause to appeal must be filed with the clerk of the Supreme Court of Georgia, if the unsuccessful petitioner desires to appeal. The petitioner shall also file, within the same period, a notice of appeal with the clerk of the concerned superior court. A justice of said appellate court shall either grant or deny the application within a reasonable time after filing. So the justice may fully consider the request for a certificate, the clerk of the concerned superior court need not prepare and retain and the court reporter need not file, a copy of the original record and a copy of the original transcript of proceedings. The clerk of the Supreme Court of Georgia shall return the original record and transcript to the clerk of the concerned superior court upon completion of the appeal if the certificate is granted. If the justice of the Supreme Court of Georgia denies the application for a certificate of probable cause, the clerk of the Supreme Court of Georgia shall return the original record and transcript and notify the clerk of the concerned superior court and the parties to the proceedings below of the determination that probable cause does not exist for appeal.

(c) If the trial court finds in favor of the petitioner, no certificate of probable cause need be obtained by the respondent as a condition

cult to apply in petitioner's case since he was tried May 12, 1975, for a crime that occurred April 10, 1975.

■ Not only is Georgia's habeas corpus statute technical and difficult of application, it also is a procedure that Georgia prisoners must utilize and complete before they can petition in a United States District Court for a writ of habeas corpus. The procedure in United States District Court is set forth in a law enacted by Congress, 28 U.S.C. § 2254, which among other things provides:

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances render-

precedent to appeal. A notice of appeal filed by the respondent shall act as a supersedeas and stay the judgment of the superior court until there is a final adjudication by the appellate court. Provided, however, that while such case is on appeal, the petitioner may be released on bail as is now provided for in criminal cases, except where the petitioner has been convicted of a crime over which the Supreme Court of Georgia has jurisdiction to consider on direct appeal. The right to bail and the amount of bond shall be within the discretion of the judge of the superior court where the sentence successfully challenged under this Chapter was originally imposed."

4. 28 U.S.C. § 2254(d) provides:

"(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

ing such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

The state procedure finally determines Fourth Amendment constitutional claims, *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and may very well be determinative of and foreclose consideration of other substantial issues in the federal proceeding because "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . shall be presumed to be correct . . . ." in the federal proceeding. The exceptions [4] to this statutory presumption are also technical.

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court

■ Georgia does not constitutionally have to afford prisoners either direct appeals from criminal convictions or a procedure for petitioning for writ of habeas corpus. *Estelle v. Dorough*, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377, 380 (1975). By statutorily providing for habeas corpus petitions it has made it mandatory for prisoners desiring to petition a United States District Court pursuant to 28 U.S.C. § 2254 to proceed in state court pursuant to Ga.Code Ann. § 50–127. That this result was intended by this State's legislature is shown by a seldom found statement of legislative intent included with 1967 Ga.Laws, p. 835, *et seq.*, a complete revision of Georgia's habeas corpus statute:

"Section 1. Statement of Legislative Intent and Purpose.

The General Assembly finds that expansion of the scope of habeas corpus in federal court by decisions of the United States Supreme Court, together with other decisions of said court (a) substantially curtailing the doctrine of waiver of constitutional rights by an accused and (b) limiting the requirement of exhaustion of state remedies to those currently available, have resulted in an increasingly larger number of state court convictions being collaterally attacked by federal habeas corpus based upon issues and contentions not previously presented to or passed upon by courts of this State; that such increased reliance upon federal courts tends to weaken state courts as instruments for the vindication of constitutional rights, with a resultant deterioration of the federal system and federal-state relations; that to alleviate said problems, it is necessary that the scope of state habeas corpus be expanded and the state doctrine of waiver of rights modified. The General Assembly further finds that expansion of state habeas corpus to include many sharply-contested issues of a factual nature requires that only the superior courts have jurisdiction of such cases."

Obviously aiming to eventually try to petition this court pursuant to 28 U.S.C. § 2254, petitioner is now proceeding in state court under Ga.Code Ann. § 50–127 to try to assert every right guaranteed to him by the Constitution of the United States or Georgia and by the laws of Georgia, that possibly was substantially denied him during his Jones County Superior Court trial. Saying that the state procedure in the case of a death row inmate is not only mandated by state law but is also finally determinative of life itself, he comes into this court before being heard in state court on his petition for habeas corpus and asks this court to find and declare under 42 U.S.C. § 1983 that the State of Georgia by failing to appoint and pay a lawyer to represent him and by failing to pay investigative and witness expenses in his habeas corpus proceeding, is denying him his constitutional rights. The defendants vigorously deny that it is constitutionally necessary to appoint counsel for petitioner or pay such expenses.

Not only does petitioner assert that the finality of death makes it constitutionally necessary for counsel to be appointed; he further urges that the development of facts not brought out upon his trial on account of ineffective assistance of appointed trial counsel and the identification and articulation of the constitutional rights substantially denied him, are tasks that can be performed only by a person who is trained in and practicing law and that are impossible of performance by him as a layman. Additionally he argues that prisoners with monetary resources can obtain necessary legal assistance and pay investigators and witnesses and are thus able to secure meaningful access to the courts, but he as an indigent, solely because of his poverty and the state's failure to appoint counsel and pay such expenses, cannot.

Volunteer legal counsel represent petitioner in this court. In petitioner's behalf they have identified substantial constitu-

proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to estab-

lish by convincing evidence that the factual determination by the State court was erroneous."

tional issues that without the assistance of counsel, petitioner will most likely be unable to develop in his state habeas proceeding. First is petitioner's claim of ineffective assistance of appointed trial counsel. Such a claim can be established only by producing evidence in Butts Superior Court of the background, character and reputation of appointed trial counsel and of what he did and failed to do. How can a death row inmate confined almost incommunicado, investigate or present such claims? How can a death row inmate gather and present evidence to refute all that lawyers for the state utilizing its monetary and legal resources, can present?

Second is petitioner's claim that the grand and petit jury master lists from which his grand and petit juries were selected, were unconstitutionally composed. This constitutional issue was presented to the trial court and decided adversely to him by the Supreme Court of Georgia.. In so doing the Supreme Court of Georgia may have failed to consider petitioner's contention that evidence showing a grand jury list of:

(a) 87.6 percent males and 12.62 percent females, and

(b) 17.71 percent blacks and 82.29 percent whites in a county that is:

(a) 47.19 percent male and 52.81 percent female, and

(b) 33.3 percent black and 66.7 percent white,

makes out a prima facie showing of unconstitutional jury composition. *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1966); *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). The adequacy of the trial court record must be considered and further factual investigation must be undertaken to determine whether or not additional facts should be presented in Butts Superior Court.

Third is petitioner's assertion that his death sentence violates the constitutional standards set forth in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), because this case is not one in which the death penalty can be imposed under the statutory standards approved in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, rehearing denied 429 U.S. 875, 97 S.Ct. 197, 198, 50 L.Ed.2d 158 (1976). In affirming petitioner's death sentence the Supreme Court of Georgia stated, "In our view, the evidence supports the jury's findings of statutory aggravating circumstances as to both the murder and rape counts, viz., that the offenses of both murder and rape were committed while the offender was engaged in the commission of another capital felony." (Ga.Code Anno. § 27–2534.1(b)(2)).[5] Petitioner's volunteer coun-

5. Ga.Code Ann. § 27–2534.1 Mitigating and aggravating circumstances; death penalty

    (a) The death penalty may be imposed for the offenses of aircraft hijacking or treason, in any case.

    (b) In all cases of other offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence:

    (1) The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony, or the offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions.

    (2) The offense of murder, rape, armed robbery, or kidnapping was committed while the offender was engaged in the commission of another capital felony, or aggravated battery, or the offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree.

    (3) The offender by his act of murder, armed robbery, or kidnapping knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person.

    (4) The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value.

    (5) The murder of a judicial officer, former judicial officer, district attorney or solicitor or former district attorney or solicitor during or because of the exercise of his official duty.

    (6) The offender caused or directed another to commit murder or committed murder as an agent or employee of another person.

sel say that as the recitation of the facts [6] by the Supreme Court of Georgia shows,

(7) The offense of murder, rape, armed robbery, or kidnapping, was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

(8) The offense of murder was committed against any peace officer, corrections employee or fireman while engaged in the performance of his official duties.

(9) The offense of murder was committed by a person in, or who has escaped from the lawful custody of a peace officer or place of lawful confinement.

(10) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or custody in a place of lawful confinement, of himself or another.

(c) The statutory instructions as determined by the trial judge to be warranted by the evidence shall be given in charge and in writing to the jury for its deliberation. The jury, if its verdict be a recommendation of death, shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt. In non-jury cases the judge shall make such designation. Except in cases of treason or aircraft hijacking, unless at least one of the statutory aggravating circumstances enumerated in section 27–2534.1(b) is so found, the death penalty shall not be imposed.

**6.** "I. Summary of the Evidence

The deceased victim, Joan Delight Bryan, was married to Mr. Thomas Bryan. They lived in a farmhouse in Gray, Georgia, with four-year-old Stacy Nadine White, the daughter of the deceased from a previous marriage.

On the morning of April 10, 1975, Mr. Bryan went to work in Milledgeville, Georgia, as usual. Mrs. Bryan and Stacy stayed at the farmhouse where Mrs. Bryan was in charge of renting some trailers located near the farmhouse.

In the early afternoon some ten or more miles away, the appellant was walking in the rain toward Wayside, Georgia. Several persons encountered the appellant as he walked and some of them positively identified him and noted the long dark coat he was wearing that extended below his knees.

The appellant arrived at the farmhouse and knocked on the door. When Mrs. Bryan, the victim, answered the door, the appellant indicated that he wanted to look at some trailers. She showed the appellant the trailers and told him the rental charge. Subsequently, the appellant asked the deceased for a glass of water and she let him into the living room.

The appellant then approached the victim sexually by 'brushing against' her breast. He ended up shooting her in the head in the presence of her four-year-old child. He also had sexual intercourse with her despite her resistance which is evident and committed sodomy on her. Whether these sexual acts occurred

the evidence does not prove that the sexual acts which petitioner says he committed before or after the victim was fatally shot is in conflict but there is no conflict concerning their occurrence.

Dr. James Dawson came to examine the victim's body. He first noticed that there was a considerable amount of blood in the general vicinity of the body. He also noticed some blood spots on the bed in the room where the deceased was found and there was also a bullet hole in the wall above the bed. There was some lividity on the body indicating that the victim was in the position in which it was found at the time blood circulation stopped.

The victim had received three wounds to the head. Two were lacerations, one located in the back of the head which almost penetrated the entire thickness of the scalp. The second laceration was similar to the first. The third wound was a gunshot wound by a .32 caliber bullet which entered the right side of the head and traveled leftward and downward, lodging in the general area of the left ear. This wound caused her death.

There were also wounds on the right hand and arm that were probably caused by a bullet because particles of lead were found in the wounds. There were also injuries to the victim's vagina and anus, at least the latter of which was damaged while her heart was still beating.

Plaster casts of shoe prints in the road in front of the Bryans' home established that the shoe prints matched some shoes of the appellant. Appellant's foster mother had a .32 caliber pistol that the appellant had used and had access to. A cleanser can appellant said he took from the Bryan home along with a towel was found where the appellant said he had thrown it away.

The appellant admitted to his grandfather that he killed Mrs. Bryan but said it was an accident.

Dr. James Dawson testified to his belief that the lacerations in the deceased's head were inflicted before the gunshot, but there was no way to be certain. The testimony of Dr. Dawson further showed that although brain tissue was present in the hair of the deceased none was found on the bed in the room where she died.

Tests on the body showed strong indications of the presence of seminal fluid in the anus and vagina of the deceased. The blanket from a bed in the Bryan's home was found to contain seminal fluid.

Appellant's pre-trial statement to officers was substantially the same as his testimony. He testified as follows. He had decided to move from his foster mother's home. He knew where some trailers were being rented and decided to go there to rent one. Since he knew he would be walking alone down a country road, he carried Joe Powell's .32 caliber pistol

after the victim was already dead, occurred before death. For the petitioner to be guilty of rape, the victim must have been a person, a living human being; if dead before the act—as terrible and disgusting as it may be—the act is not rape. See Ga. Code Ann. § 26–2001.[7] Rape being the aggravating circumstance requisite to the imposition of the death penalty, petitioner's death sentence becomes a life sentence if this point and contention is successfully developed. Petitioner's volunteer counsel ask that the state also afford expert witnesses to testify medically as to whether or not the evidence already heard, proves death before or after the sexual act.

Fourth is petitioner's volunteer counsel's contention that his trial which began in the morning and except for usual breaks, lasted until several hours after midnight of that day at which time the death sentence was imposed, was thereby conducted in violation of his Fifth Amendment constitutional right to not be deprived of life without due process of law. A marathon trial he suggests is a deprivation of life without the due process—the fair trial—that the law calls for.

A fifth contention not yet made but that could be made by appointed counsel is that *Owens v. State*, 120 Ga. 296, 48 S.E. 21, and *Futch v. State*, 90 Ga. 472, 16 S.E. 102, require that petitioner's entire admission be believed because the crimes petitioner was convicted of cannot be proven without such admissions. As to murder, petitioner's admission may establish self-defense or an absence of pre-meditation and as to rape, petitioner's admission may establish that the sexual acts were committed after death. Such contentions are beyond the knowledge of law possessed by the average layman.

As to each of these contentions and issues, indigent petitioner if unrepresented by counsel and without means to find and present evidence, will be unable to present his side of his habeas corpus case to the Butts County Superior Court. All that will be heard by that court is what the State with its superior legal and monetary resources presents or the presiding judge develops from the trial transcript, the petitioner and the state's witnesses and lawyers. These shortcomings do not result from intentional or negligent conduct of

for protection. He arrived at the deceased's home safely and asked to see trailers.

After he (the appellant) saw the trailers he asked the deceased for a glass of water. She gave him some water and began talking with him. In the course of the conversation she mentioned she was in charge of the place because a certain Mr. Dewitt was in New York. At that time the appellant 'grabbed her . . kinda rubbed against her breasts.'

The appellant further testified that the deceased became hysterical and tried to get a rifle from the mantel in the living room near where they were standing. He pulled his gun out and prevented deceased from getting the rifle. The victim then turned and grabbed the appellant's gun. The gun fired once and the struggle continued. The gun fired again and the deceased sank to the floor of the living room. As the deceased fell, he (the appellant) asked her where she was hit and she answered 'head.'

The appellant testified that he then became frightened and decided to cover up his presence. 'I tried to make it look like somebody raped her.' He testified that he dragged the deceased by her arms into the back bedroom and laid the top part of her body on the bed and took her clothes off. He then had inter-course with her body and attempted anal intercourse.

On cross examination the appellant testified to the following: When he went out to see the trailers he did not have any money and did not have a job at the time; he said that he would earn the rent by playing pool, although he was not proficient at the game. When asked how he planned to transport himself back and forth to Gray, Georgia, a distance of about fifteen miles, he stated that he would walk and hitch-hike. The appellant admitted that he slapped four-year-old Stacy as he left because she was crying." *Gibson v. State*, 236 Ga. 874–877, 226 S.E.2d 63, 64–66 (1976).

7. Ga.Code Ann. 26–2001 provides:

"A person commits rape when he has carnal knowledge of a female, forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ. A person convicted of rape shall be punished by death or by imprisonment for life, or by imprisonment for not less than one nor more than 20 years. No conviction shall be had for rape on the unsupported testimony of the female."

state judges or officials or lawyers; they are administering the statute as enacted by the legislature. The result flows from the fact that the statute itself as legislatively enacted does not provide for legal and monetary assistance even when a petitioner's life is at stake.

█ It is now firmly established that States must protect every prisoner's constitutional right of access to the courts by providing prisoners with "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72, · 83 (1977). In so holding the Supreme Court stated:

It is now established beyond doubt that prisoners have a constitutional right of access to the courts. This court recognized that right more than 35 years ago when it struck down a regulation prohibiting state prisoners from filing petitions for habeas corpus unless they were found "properly drawn" by the "legal investigator" for the parole board. *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640 , 85 L.Ed. 1034 (1941). We held this violated the principle that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." Id., at 549, 61 S.Ct. 640, 85 L.Ed. 1034. See also *Cochran v. Kansas*, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942).

More recent decisions have struck down restrictions and required remedial measures to insure that inmate access to the courts is adequate, effective and meaningful. Thus, in order to prevent "effectively foreclosed access," indigent prisoners must be allowed to file appeals and habeas corpus petitions without payment of docket fees. *Burns v. Ohio*, 360 U.S. 252, 257, 79 S.Ct. 1164, 1168, 3 L.Ed.2d 1209, 10 Ohio Ops.2d 404, 84 Ohio L.Abs. 570 (1959); *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). Because we recognized that "adequate and effective appellate review" is impossible without a trial transcript or adequate substitute, we held that States must provide trial records to inmates un-

able to buy them. *Griffin v. Illinois*, 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891, 55 A.L.R.2d 1055 (1956). Similarly, counsel must be appointed to give indigent inmates "a meaningful appeal" from their convictions. *Douglas v. California*, 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963).

Essentially the same standards of access were applied in *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), which struck down a regulation prohibiting prisoners from assisting each other with habeas corpus applications and other legal matters. Since inmates had no alternative form of legal assistance available to them, we reasoned that this ban on jailhouse lawyers effectively prevented prisoners who were "unable themselves, with reasonable adequacy, to prepare their petitions," from challenging the legality of their confinements. Id., at 489, 89 S.Ct. 747, 21 L.Ed.2d 718. *Johnson* was unanimously extended to cover assistance in civil rights actions in *Wolff v. McDonnell*, 418 U.S. 539, 577–580, 94 S.Ct. 2963, 2985–2988, 41 L.Ed.2d 935, 71 Ohio Ops.2d 336 (1974). And even as it rejected a claim that indigent defendants have a constitutional right to appointed counsel for discretionary appeals, the Court reaffirmed that States must "assure the indigent defendant an adequate opportunity to present his claims fairly." *Ross v. Moffitt*, supra, 417 U.S. [600], at 616, 41 L.Ed.2d 341, 94 S.Ct. 2437. *"Meaningful access" to the courts is the touchstone.* See id., at 611, 612, 615, 94 S.Ct. 2437, at 2444–2446, 41 L.Ed.2d 341.

430 U.S. at 821, 97 S.Ct. at 1494, 52 L.Ed.2d at 78–80. (emphasis added).

The court then continued to discuss and put to rest the argument that "meaningful access" does not require affirmative action by the state. The court stated:

Petitioners contend, however, that this constitutional duty merely obliges States to allow inmate "writ writers" to function. They argue that under *Johnson v. Avery*, supra, as long as inmate communications on legal problems are not restrict-

ed, there is no further obligation to expend state funds to implement affirmatively the right of access. This argument misreads the cases.

In *Johnson* and *Wolff v. McDonnell,* supra, the issue was whether the access rights of ignorant and illiterate inmates were violated without adequate justification. Since these inmates were unable to present their own claims in writing to the courts, we held that their "constitutional right to help," *Johnson v. Avery,* supra, 393 U.S., at 502, 89 S.Ct. [747] at 757, 21 L.Ed.2d 718 (White, J., dissenting), required at least allowing assistance from their literate fellows. But in so holding, we did not attempt to set forth the full breadth of the right of access. In *McDonnell,* for example, there was already an adequate law library in the prison. The case was thus decided against a backdrop of availability of legal information to those inmates capable of using it. And in *Johnson,* although the petitioner originally requested law books, see 393 U.S., at 484, 89 S.Ct. [747] at 748, 21 L.Ed.2d 718, the Court did not reach the question, as it invalidated the regulation because of its effect on illiterate inmates. Neither case considered the question we face today and neither is inconsistent with requiring additional measures to assure meaningful access to inmates able to present their own cases.

Moreover, *our decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts.* It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. States must forego collection of docket fees otherwise payable to the treasury and expend funds for transcripts. State expenditures are necessary to pay lawyers for indigent defendants at trial, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and in appeals as of right, *Douglas v.*

*California,* supra. This is not to say that economic factors may not be considered, for example in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial. Thus, neither the availability of jailhouse lawyers nor the necessity for affirmative state action is dispositive of respondents' claims. *The inquiry is rather whether law libraries or other forms of legal assistance are needed* to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.

430 U.S. at 823, 97 S.Ct. at 1495, 52 L.Ed.2d at 80, 81. (emphasis added).

The court's detailed inquiry focused on the basic necessity for an "adversarial presentation" of post-appeal prisoner complaints which the Court emphasized are in contrast to discretionary appeals, "in large part . . . original actions seeking new trials, release from confinement or vindication of fundamental civil rights. . . ." which "frequently raise heretofore unlitigated issues," and resulted in the court's holding, to wit:

> We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

430 U.S. at 828, 97 S.Ct. at 1498, 52 L.Ed.2d at 83.

The Court recognized that this constitutional mandate can be satisfied through various constitutionally acceptable methods or means and pointed out that "any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards." *Id.* 430 U.S. at 832, 97 S.Ct. at 1500, 52 L.Ed.2d at 85.

The petitioners in *Bounds v. Smith* succeeded in establishing broad constitutional standards for all prisoner post-appeal civil actions, be they routine or non-routine,

complicated or uncomplicated. Those broad constitutional standards as such constitute the minimum that must be afforded any prisoner in any post-appeal civil action.

The application of these *Bounds v. Smith* constitutional standards to the entire penitentiary system of this State is before this court in *Hardwick et al. v. Ault et al.*, Civil No. 74–139–MAC, Macon Division, a class action as to the relief mandated by *Bounds v. Smith*. In that case the State of Georgia has submitted a proposed plan for all prisoners to have access to an adequate law library, and only the adequacy of the plan remains for decision. Petitioner will thus soon have access to an adequate law library. That will not moot petitioner's individual complaint because it seeks a declaration of this court that in petitioner's complex case of dire consequences, more than access to an adequate law library is constitutionally mandated. Is it?

■ Logically the obvious first answer to the question was furnished by Mr. Justice Rehnquist in his dissent in *Bounds v. Smith, supra* :

> "If 'meaningful access' to the courts is to include law libraries, there is no convincing reason why it should not also include lawyers appointed at the expense of the State. Just as a library may assist some inmates in filing papers which contain more than the bare factual allegations of injustice, appointment of counsel would assure that the legal arguments advanced are made with some degree of sophistication." *Id.* 430 U.S. at 841, 97 S.Ct. at 1505, 53 L.Ed.2d at 91.

Likewise in instances of demonstrated need there is no convincing reason why it should not include fees of lay and expert witnesses, investigative expenses and other fees and costs.

A second answer comes from considering—as the Court did in *Bounds v. Smith* —what is needed to give this prisoner a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.

Petitioner's case and its issues as presently known and already described, is far from routine. It is complex from both a legal and factual standpoint. If the hearing on the merits that the state habeas statute provides for is to be truly adversarial in nature, both sides of each legal and factual issue must be presented to the trial judge. An adversary as contemplated for purposes of this case, is someone who has both the desire and the ability to present these complex issues to the court. The State's experienced attorneys unquestionably fit the definition. Petitioner on the other hand does not. He has the desire but no ability— much like the proverbial toothless tiger.

Petitioner's ability must be supplied for him and if there is to be a full and fair hearing, must include (1) counsel appointed at the expense of the State, and (2) payment by the State of such investigative, witness—lay and expert, and litigation expenses as are determined by the state habeas court to be reasonably necessary for petitioner's habeas case to be factually and legally presented in his state habeas proceeding.

This is not to say that every prisoner who petitions for a writ of habeas corpus is entitled to counsel and such expenses of litigation. It is to say that this petitioner whose need for counsel and such expenses has been demonstrated, and others similarly situated are constitutionally entitled to counsel and such expenses. Without them petitioner's access to the courts of this state for a habeas hearing is and will be meaningless instead of meaningful as the Constitution requires.

Accordingly, this court does hereby declare that the petitioner because of demonstrated need is constitutionally entitled to:

> (1) counsel appointed by the state habeas court and paid by the state, and

> (2) payment by the State of such investigative, witness—lay and expert—and litigation expenses as are determined by the state habeas court to be reasonably necessary for petitioner's habeas case to be fully and fairly heard in state court.