## 45526. HANSON v. THE STATE.
(372 SE2d 436)

BELL, Justice.

The appellant, James Robin Hanson, was convicted of malice murder and was sentenced to life imprisonment. He appeals, and we affirm.*

---

* The offense occurred on July 20, 1987. The grand jury for the September 1987 term of Coweta Superior Court returned a single-count indictment accusing Hanson of malice murder, which was filed on September 8, 1987. The trial took place later in September 1987. The jury returned a verdict of guilty, and the court sentenced Hanson to life imprisonment.

On October 19, 1987, Hanson's present counsel filed a notice of appearance, replacing his trial counsel; Hanson filed a motion for new trial; and the court reporter certified the trial transcript. On December 17, 1987, the court denied a new trial, but on December 22 the court reopened consideration of the motion. The appellant filed amendments to his motion on January 14 and February 4, 1988, and the court denied the amended motion on February 5.

On July 20, 1987, a series of altercations in Newnan, Georgia, between Hanson and the victim, Benjamin Crews, culminated in Hanson killing Crews with a single shot from a pistol. Earlier that day, Hanson, Crews, and Pierce Shaw (a friend of Hanson) were drinking together at a pond in Newnan. During the course of the drinking session, Hanson and Crews engaged in a fistfight. When the fight ended, Crews went to the house of his brother, Williams Crews, whose aid he enlisted. The two brothers armed themselves with large sticks, and then went looking for Hanson in a car. In the meantime Hanson had left the pond, obtained a pistol, and rejoined Shaw at Shaw's house. According to Ruth Shaw (Pierce Shaw's mother), Hanson told her he planned to get even with Benjamin Crews. The Crews brothers eventually located Hanson and Shaw, who were walking on a city street. The Crews brothers stopped their car and got out. The victim shouted at Hanson that he had come to settle things with him. Hanson showed the victim his pistol. The victim proposed a fight without weapons, and threw down his stick. Hanson instructed Shaw to get the stick, but the victim grabbed the stick before Shaw could get it. According to Hanson's testimony, the victim then attacked him with the stick, and Hanson fired the pistol to protect himself. However, according to William Crews, the victim had merely picked up the stick and turned toward Hanson before Hanson shot him — the victim was not swinging the stick at that time. Hanson fled the scene after he shot the victim, and later surrendered to the police.

Shortly after he surrendered, Hanson twice told the officers who had him in custody that he did not shoot the victim. One instance occurred at the station, when Hanson asked an officer what he (Hanson) was waiting for. The officer "told him in connection with the killing of Benny Crews." Hanson responded by stating "he did not shoot anyone." The second instance occurred when, as the police were booking Hanson, he asked an officer what he was being charged with. The officer told him "murder," to which Hanson volunteered a response that the officer summarized thusly:

> [Hanson] told me he hadn't killed anyone but he had a pistol that night that he got from a relative . . . and he said that he did not shoot, stab or hit anybody with a stick that night . . . .

1. In his fourth enumeration of error Hanson claims that the evidence was insufficient to convict him under the standard of *Jackson*

---

Hanson filed the notice of appeal on February 15, 1988, and the clerk of superior court certified the record on February 25, 1988. The clerk of this court docketed the appeal on March 2, and counsel for the parties argued the appeal on May 9, 1988.

*v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), because, as he asserted in his testimony, he killed the victim in self-defense. We disagree. The jury was authorized to draw an unfavorable inference concerning Hanson's credibility, based on the inconsistencies between Hanson's testimony and his pre-trial statements that he did not shoot or kill anyone. Moreover, the evidence favorable to the state includes Ruth Shaw's testimony that Hanson said he was going to get even with the victim, and William Crews' testimony that the victim was not swinging at Hanson at the moment Hanson shot him. Our review of this and the remaining evidence shows that the evidence and all reasonable inferences therefrom, when viewed in a light most favorable to the state, authorized the conviction of malice murder. *Jackson*, supra, 443 U. S.

2. In Enumerations Two, Three, Five, and Six, Hanson alleges that the trial court violated state and federal constitutional guarantees in various ways. These assertions are unsupported by argument or citation of authority, and hence are deemed abandoned pursuant to Supreme Court Rule 45. The enumerations in question also raise other issues, which we will address in the remainder of this opinion.

3. Hanson did not request a charge that the verdict had to be unanimous, and the court did not give one. In Enumeration Five Hanson contends that the court erred by not instructing the jury that its verdict had to be unanimous. He bases his argument on *Fleming v. State*, 240 Ga. 142, 145 (4) (240 SE2d 37) (1977). In that case, this court said:

> No charge on the necessity that a verdict be unanimous was requested, and none was given. Appellant complains of this for the first time on appeal. If there was any doubt as to the unanimity of the verdict, the jury could have been (but was not) polled. Absent a request for a charge on unanimity, and absent a request that the jury be polled, we will not reverse a conviction for failure to give such a charge unless it appears that the jury was in fact mislead into believing that a less than unanimous verdict would be lawful. [Cits.] There is no indication that the jury was mislead in this case.

Citing this passage from *Fleming*, Hanson claims that the court's failure to instruct on the requirement of unanimity caused the jury to misunderstand the requirement. In an attempt to satisfy his burden under *Fleming* to show that the jury was in fact misled into believing that a less-than-unanimous verdict would be lawful, Hanson's offers the post-trial affidavit of one of the jurors, James Hines, who swears that he did not think that Hanson was guilty of murder and that he did not know that he "had the legal right to vote my individual opin-

ion once all of the other jurors voted guilty."

We find this argument has no merit. As we will explain, we think that Hanson's reliance on *Fleming* is misplaced because unlike the trial court in *Fleming* the court in this case polled the jury, thus providing Hanson with an opportunity to assess the unanimity of the jurors. Moreover, we conclude that, even if the court had not polled the jury and *Fleming* therefore applied, Hines' post-trial affidavit would not be admissible to show that the jury was misled, because in our opinion it would be an impermissible attempt to impeach the verdict.

a. We summarize the rule established by Division 4 of *Fleming* as follows: If a defendant neither requests a charge on unanimity nor requests a jury poll, but nevertheless contends on appeal that the court should have charged on unanimity anyway, then he has the burden to show that the failure to give the charge somehow misled the jury into believing that its verdict did not have to be unanimous. This much is clear from the language of *Fleming*, but the facts of this case require us to explain some additional implications of *Fleming*.

This court designed the *Fleming* rule to provide a limited post-trial remedy to a defendant in the event that the trial court does not poll the jury. The absence of a jury poll is an express condition of this rule; the rule does not apply if the court does not charge on unanimity, but nevertheless does poll the jury. The reason the rule does not apply is that the instruction and the poll have the same purpose: to insure the unanimity of the verdict. If the court does not give the instruction but does poll the jury, the defendant has an opportunity to resolve his doubts about the unanimity of the verdict. Moreover, during the poll rather than during the post-trial period is a more appropriate time to raise the issue of unanimity, because the trial court can cure the error by instructing the jury on unanimity and returning it for further deliberations.

We therefore hold that, if the court does not instruct on unanimity, but does poll the jury to ascertain its unanimity, then the defendant must use that opportunity to ascertain whether the court misled the jury by failing to instruct on unanimity, and the defendant may not subsequently raise a *Fleming* contention.

We will now apply this explication of *Fleming* to the facts of this case. Hanson did not request a charge on unanimity, and the trial court did not give the charge. However, the trial court did poll the jury at Hanson's request. We therefore conclude that the post-trial remedy of *Fleming* is not available to Hanson.

b. Moreover, we conclude that, even if Hanson had the right to raise the *Fleming* issue, he could not use the post-trial affidavit of a juror to meet his burden to show that the jury was in fact misled by the court's failure to charge on unanimity. "The affidavits of jurors may be taken to sustain but not to impeach their verdict." OCGA §

17-9-41. See *Aguilar v. State*, 240 Ga. 830 (1) (242 SE2d 620) (1978); *Ellis v. State*, 176 Ga. App. 384 (1) (336 SE2d 281) (1985); *Kittles v. State*, 168 Ga. App. 123 (4) (308 SE2d 241) (1983).

4. Enumeration One is closely related to Enumeration Five. Hanson's first enumeration embodies his contention that the trial court incorrectly polled the jury after it returned the verdict. Hanson claims that the response of Juror Hines to the poll raised doubts about the unanimity of the verdict, and says that the court therefore should have returned the jury for additional deliberations or should have declared a mistrial. However, we find no error, for the following reasons.

a. Hanson's trial counsel did not object or move for further deliberations after Hines' response, and thereby waived any objection to the verdict. *Tucker v. State*, 252 Ga. 263 (312 SE2d 300) (1984); *Jackson v. State*, 184 Ga. App. 123 (361 SE2d 14) (1987).

b. Moreover, even if Hanson had raised a timely objection after Hines' response, we conclude that the trial court nevertheless would not have erred by refusing to return the jury for additional deliberations or to declare a mistrial. Our reasons are as follow.

In support of his argument that Hines did not agree to the verdict, Hanson offers statements that Hines made during the jury poll, which are part of the trial transcript. He also offers — as he does with respect to Enumeration Five — the post-trial affidavit in which Hines attempts to impeach the verdict. However, as we have already held in the preceding division of this opinion, Hines' affidavit is not admissible. We therefore confine the remainder of our analysis of Enumeration One to examining Hines' response during the jury poll. That response is part of the following dialogue between him and the court:

Q [The Court] James T. Hines: Mr. Hines, you have heard the verdict as read to you by the Court, was that your verdict?

A Yes, sir.

Q Is it still your verdict?

A Yes, sir.

Q Was it freely and voluntarily made?

A Yes, sir. Could I say something? I still have some questions in my mind.

Q The jury has reached a verdict in this case. Now Mr.

Hines, the verdict that the jury has reached in this case is that the defendant has been found guilty. Is that your verdict?

A Yes, sir.

Q Is it still your verdict?

A Yes, sir.

Q Was your verdict freely and voluntarily made?

A Yes, sir.

Q All right, sir . . . .

Hanson contends that this verbal exchange between the court and Hines shows that the verdict was not unanimous, but we disagree. This question is controlled by *Young v. State*, 239 Ga. 53 (6) (236 SE2d 1) (1977). In that case we said the fact that a juror had indicated he had "reservations" about the verdict

does not prevent the verdict from being unanimous. The requirement is that a juror agree to a verdict. In this case, the juror on two occasions answered affirmatively that the verdict was his in the jury room and still his upon being polled. [Cits.]

*Young*, supra, 239 Ga. at 60. Accord *Scruggs v. State*, 181 Ga. App. 55 (1) (351 SE2d 256) (1986) (two jurors expressed "some doubts" during the jury poll). Juror Hines indicated four times "that the verdict was his in the jury room and still his upon being polled." *Young*, supra, 239 Ga. at 60. Thus, we find his statement that he still had some questions in his mind did not prevent the verdict from being unanimous, and we therefore hold that Hanson's first enumeration lacks substantive merit.

c. Hanson contends that the manner in which the court conducted the poll violated the United States Constitution. Hanson's premise is that a state-court defendant has a fundamental due-process right under the Sixth Amendment to poll the jury. In support of this contention Hanson cites several federal decisions. However, our review of these cases shows they actually do not support his argument, and we are unaware of any other decisions that hold in favor of his assertion. See generally LaFave and Israel, Criminal Procedure, Vol. 2, § 21.1 (e) and Vol. 3, § 23.7 (h) (West 1984 & 1988 pocket parts). For these reasons we conclude that Hanson's Sixth-Amend-

ment argument has no merit.

d.

> In [this enumeration] of error, [Hanson] refers to [an] alleged state constitutional violatio[n] but he fails to furnish argument or citations of authority in relation thereto and, pursuant to Rule 45 of the Supreme Court of Georgia, we do not consider th[is] [ground].

*Gordon v. State,* 257 Ga. 439, fn. 1 (360 SE2d 253) (1987).

5. Hanson's second enumeration is that the trial court erred by refusing to instruct the jury on Hanson's seventeenth and eighteenth requests to charge, which concerned violent encounters between Benjamin Crews and Hanson before Hanson killed Crews. However, we disagree. "There is no error in a court's refusal to give a charge exactly as requested if the charge as given substantially covers the principle at issue. [Cits.]" *Edwards v. State,* 255 Ga. 149, 150 (335 SE2d 869) (1985).

6. In his third enumeration Hanson complains that the trial court did not allow him to present evidence of specific acts of violence by the victim against a third person. However, we conclude that the court ruled correctly in excluding that evidence. *Bennett v. State,* 254 Ga. 162 (3) (a) (326 SE2d 438) (1985); *Lee v. State,* 256 Ga. 410 (3) (349 SE2d 711) (1986).

7. The appellant's sixth enumeration of error is that the verdict was ambiguous in that it did not specify the crime of which the jury found Hanson guilty. This enumeration has no merit. The court's instructions to the jury and the form of the verdict unambiguously show that the jury found Hanson guilty of malice murder.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 7, 1988.

*Millard C. Farmer, Jr., Joseph M. Nursey,* for appellant.

*William G. Hamrick, Jr.,* District Attorney, *Peter J. Skandalakis,* Assistant District Attorney, *Michael J. Bowers,* Attorney General, *Eddie Snelling, Jr.,* Assistant Attorney General, for appellee.