## S04G0664. BENEFIELD v. THE STATE.
### (602 SE2d 631)

THOMPSON, Justice.

We granted certiorari to the Court of Appeals in *Benefield v. State*, 264 Ga. App. 511 (591 SE2d 404) (2003), to determine whether a criminal defendant's right to a poll of the jurors was violated when the trial court received a negative response to a poll question posed to a juror, and no further deliberation occurred. We answer in the affirmative and reverse the judgment of the Court of Appeals.

Walter Clifford Benefield was found guilty by a jury of three counts of aggravated child molestation and one count of child moles-tation. After the verdict was published, Benefield's counsel requested that the jury be polled. In accordance with that request, the trial court asked each of the jurors whether the published verdict was their verdict in the jury room and whether it was still their verdict. The twelfth juror responded "no" to the first poll question. Neither defense counsel, the prosecutor, nor the court reacted to the response. The trial court then asked that juror the second question, "is it now your verdict," to which the juror responded "yes." At the conclusion of the poll, the court informed the jury, "if any of you had said that it is not your verdict that was published or it is not your verdict now, what I would have done would have been sent you back to the jury room and let you deliberate again." The court then entered judgment and sentenced the defendant.

Benefield appealed to the Court of Appeals, raising for the first time a claim of ineffective assistance of trial counsel due to counsel's failure to object to the jury poll. By order, the Court of Appeals remanded the case to the trial court for a hearing on that issue.[1] On remand, the trial court ruled that any ambiguity in the verdict was removed when the juror replied affirmatively to the second question, and that Benefield was not denied effective assistance of trial counsel. Benefield again appealed to the Court of Appeals, which affirmed

---

[1] At the hearing, trial counsel stated that he did not hear the juror's negative response; and the prosecutor stated that he thought he heard the juror say "no," but because no one else reacted, he thought he heard incorrectly. The prosecutor then approached the court reporter, who confirmed that the response was "no." By this time, the jury had been dismissed. The trial court apparently did not hear the negative response.

the trial court's ruling that the verdict was unanimous, and concluded that Benefield was not denied effective assistance of counsel. *Benefield,* supra.

> "There is no uniformity in, nor statutory authority for, polling a jury although it is a material right derived from common law. [Cit.] The object of the poll is to ascertain before the public and the prisoner that the verdict agreed upon in the jury room is still the unanimous verdict of the jury." [Cit.] We have held that the questions, "Was that your verdict?" and "Is it now your verdict?" meet the minimum requirements of the defendant's right to a poll of the jurors. [Cit.]

(Emphasis omitted.) *Tucker v. State,* 252 Ga. 263 (349 SE2d 172) (1984).

Where a poll of the jury discloses other than a unanimous verdict, the proper procedure is for the trial court to return the jury to the jury room for further deliberations in an effort to arrive at a unanimous verdict. *Rouse v. State,* 265 Ga. 32 (3) (453 SE2d 30) (1995). On this principle, the cases are legion. See, e.g., *Larry v. State,* 266 Ga. 284 (5) (466 SE2d 850) (1996); *Burnett v. State,* 240 Ga. 681 (11) (242 SE2d 79) (1978); *Young v. State,* 239 Ga. 53 (6) (236 SE2d 1) (1977); *Miller v. State,* 265 Ga. App. 402 (2) (593 SE2d 943) (2004); *Hunter v. State,* 202 Ga. App. 195 (5) (413 SE2d 526) (1991); *Lockleer v. State,* 188 Ga. App. 271 (1) (372 SE2d 663) (1988); *Rosser v. State,* 156 Ga. App. 463 (2) (274 SE2d 812) (1980); *White v. Seaboard C.L.R. Co.,* 139 Ga. App. 833 (1) (229 SE2d 775) (1976).

The Court of Appeals incorrectly interpreted precedent from both our appellate courts in arriving at the conclusion that the juror's answer to the second question "cured any ambiguity that may have been caused by [her] negative response to the first." *Benefield,* supra at 514. In *Larry v. State,* supra at 287 (5), upon which the Court of Appeals relied, the trial court properly returned the jury for further deliberations when a juror answered a poll question in the negative. After further deliberations the jury arrived at a unanimous verdict and another poll was conducted. That poll confirmed that each juror assented to the verdict both in the jury room and during the jury poll. We held that "[t]he earlier voiced reservations . . . did not prevent the final verdict from being free and voluntary and unanimous." Id. at 287. That was because the proper procedure had been implemented and the jury ultimately was able to reach a unanimous verdict.

This is not a case in which a juror expressed reservations about her verdict, but reluctantly agreed with it.

[T]here is a great difference between agreeing reluctantly to a verdict and so unwillingly consenting to a verdict as to seize the first proper opportunity to declare that fact. . . . [W]hen the juror states that his assent to a verdict of guilty was not freely and voluntarily given, it is necessarily to be implied that his concurrence was due to external pressure, not to his own volition, but to the volition of another, substituted in place of his own.

*Ponder v. State*, 11 Ga. App. 60, 61 (74 SE 715) (1912). Thus, the Court of Appeals' reliance on *Larry*, supra and *Scruggs v. State*, 181 Ga. App. 55 (1) (351 SE2d 256) (1986), was misplaced. See also in that context *Rouse*, supra; *Hanson v. State*, 258 Ga. 564 (4) (372 SE2d 436) (1988); *Young*, supra; *Parker v. State*, 81 Ga. 332 (5) (6 SE 600) (1888).

"In criminal cases the privilege of polling a jury is the legal right of the defendant, and does not depend upon the discretion of the court." *Maddox v. State*, 233 Ga. 874, 876 (2) (213 SE2d 654) (1975). The purpose of the rule is to insure that each member of the jury assents to the verdict, and for the court to discern possible coercion. In accordance with that precept and a century of precedent of our appellate courts, we conclude that a negative response to a poll question "is enough to raise the inference that the finding of the jury was not concurred in by each of the jurors, and, this being true, there was no legal verdict." *Ponder*, supra at 62. We hereby adopt the reasoning of *White v. Seaboard C.L.R. Co.*, supra at 836-837:

When this juror answered "No" to the question "Did you vote for this verdict your individual self?" and that it was not his verdict, then there was no verdict, and the jurors should have been returned to the jury room for further deliberation. No motion by the parties was necessary — this should have been done by the court on its own motion. There having been no legal verdict, there could be no valid judgment.

Thus, it was not incumbent upon counsel to move the court for further deliberations. To the extent that *Hanson v. State*, supra; *Jackson v. State*, 184 Ga. App. 123 (361 SE2d 14) (1987); and *Person v. State*, 235 Ga. 814 (4) (221 SE2d 587) (1976), are inconsistent with this ruling, they are expressly overruled.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

I respectfully dissent because the majority's holding is based upon its misidentification of the issue presented for resolution in this

case. This Court granted certiorari to review the holding in *Benefield v. State*, 264 Ga. App. 511 (591 SE2d 404) (2003) that no reversible violation of the accused's right to a jury poll occurred when, despite a juror's negative response to one of the two questions posed by the trial court, further deliberations were not conducted. There is precedent for the proposition that such a violation can result when a trial court ignores a juror's negative poll answer and fails to order that deliberations continue. *White v. Seaboard C.L.R. Co.*, 139 Ga. App. 833, 837 (1) (229 SE2d 775) (1976) holds, with no citation of any supporting authority, that, in those circumstances,

> [n]o motion by the parties [is] necessary — this should [be] done by the court on its own motion. There having been no legal verdict, there could be no valid judgment. . . . [C]ounsel [is] not required to "voir dire" [the negatively responding] juror . . . further, [if] he already . . . answered that it was not his verdict.

However, that is not what occurred in this case. Contrary to the circumstances presented in *White*, neither the trial court nor defense counsel heard the twelfth juror when she responded "no" to the first of the two poll questions. Consequently, we do not need to consider whether *Hanson v. State*, 258 Ga. 564, 568 (4) (a) (372 SE2d 436) (1988) and *Jackson v. State*, 184 Ga. App. 123 (361 SE2d 14) (1987) remain viable authority for the proposition that further deliberations are waived unless expressly requested.

Here, the record demonstrates that, rather than actively ignoring the negative response, the trial court and defense counsel merely misunderstood the twelfth juror and assumed that she, as did all the others before her, gave affirmative answers to both of the poll inquiries. Thus, the actual issue in this case is whether the juror's negative answer to the first question requires a new trial when the failure to conduct further deliberations is a result of a misinterpretation of the response and when the answer to the second question is unequivocally affirmative. In my opinion, there was no reversible error under the circumstances presented here.

A new trial would be authorized if the record supported a finding that Benefield was denied the benefit of the jury poll that he requested. "In criminal cases the privilege of polling a jury is the legal right of the defendant, and does not depend upon the discretion of the court. [Cits.]" *Maddox v. State*, 233 Ga. 874, 876 (2) (213 SE2d 654) (1975). " 'The object of the poll is to ascertain before the public and the prisoner that the verdict agreed upon in the jury room is *still* the unanimous verdict of the jury.' [Cit.]" (Emphasis in original.) *Tucker v. State*, 252 Ga. 263 (349 SE2d 172) (1984). In other words, in

Georgia, as in other jurisdictions, the purpose of a jury poll is to give each juror an opportunity to withdraw the consent to the verdict which he or she ostensibly gave in the jury room. See *Mitchell v. State*, 239 Ga. 456, 459 (4) (238 SE2d 100) (1977). See also *United States v. Blackston*, 547 FSupp. 1200, 1220 (II) (S.D. Ga. 1982) (applying federal law). "It is within the power of any juror, before leaving the jury-room, or even after coming into court, to recede from the verdict to which he has previously assented, at any time before it has become too late to poll." *Cooper v. State*, 103 Ga. 63, 65-66 (29 SE 439) (1897). Thus, the poll inquiries formulated by the trial court must be designed to "provide sufficient instruction and ample opportunity for a juror to change his or her mind. [Cit.]" *Mitchell v. State*, supra at 459 (4).

"[W]e have held that the questions, 'Was that your verdict?' and 'Is it now your verdict?' meet the minimum requirements of the defendant's right to a poll of the jurors. [Cit.]" *Tucker v. State*, supra. However, we have also recognized that the polling process is readily misunderstood by the jurors. *Green v. State*, 246 Ga. 598, 604 (17) (272 SE2d 475) (1980). That is especially true with regard to the somewhat ambiguous question regarding the "verdict" which "was" reached in the jury room. A reasonable juror might misinterpret that question as an inquiry into the voting process, concluding that it seeks to establish whether he or she consistently voted for the guilty verdict throughout the deliberations or, in the alternative, ever cast a not guilty ballot. As demonstrated by *Green v. State*, 240 Ga. App. 377, 381 (8) (523 SE2d 581) (1999), a juror who eventually supported the guilty verdict, but only after initially rejecting it, might well respond "no" when asked whether the published verdict "was" his or her verdict. Here, the trial court, after conducting the poll, expressly informed the jurors that "if any of you had said that it is not your *verdict that was published* or it is not your verdict now, what I would have done would have been sent you back to the jury room and let you deliberate again." (Emphasis supplied.) Obviously, having heard that, the twelfth juror would have spoken up if the "verdict that was published" was not the one to which she had finally agreed in the jury room. She did not raise any such contention. Thus, it seems apparent that she understood the poll question about whether the verdict "was" hers as meaning whether she had always been of the opinion that Benefield was guilty. See *Green v. State*, 240 Ga. App. 377, supra.

Moreover, although a trial court certainly should pose both of the poll inquiries, they are not necessarily of equal importance. The question regarding the verdict reached in the jury room is pro forma and borders on the rhetorical, since there is only the remotest of possibilities that, in the absence of perceived unanimity there, the jurors would return to the courtroom and announce that they have

reached a verdict. The other inquiry is the one which is most calculated to achieve the purpose of the poll, which is to establish whether each individual juror continues to adhere to the previously announced verdict or will choose instead to change his or her mind and destroy the unanimity earlier reached. See *Wilson v. State*, 93 Ga. App. 375, 376 (2) (91 SE2d 854) (1956). Therefore, the reported cases unsurprisingly focus mainly on the second question. See *Larry v. State*, 266 Ga. 284, 287 (5) (466 SE2d 850) (1996); *Rosser v. State*, 156 Ga. App. 463, 464 (2) (274 SE2d 812) (1980); *White v. Seaboard C.L.R. Co.*, supra. See also *Ponder v. State*, 11 Ga. App. 60 (74 SE 715) (1912) (dealing with the separate poll question of whether a juror consented to verdict "freely and voluntarily," which, according to *Hudson v. State*, 237 Ga. 241 (3) (227 SE2d 257) (1976), need not be asked when conducting a poll).

Cases which address the inquiry about the verdict agreed to in the jury room clearly demonstrate that it is of lesser significance than the second. One such case is *Person v. State*, 235 Ga. 814, 816 (4) (221 SE2d 587) (1976), in which a "juror was polled as follows: 'Q. Is this your verdict? A. Yes, sir. Q. Was it your verdict in the jury room? A. Partially. Q. Is it now your verdict? A. Yes. It is.' " Despite the fact that the juror did not give an unqualified affirmative answer when asked whether she had agreed with the verdict in the jury room, this Court unanimously rejected the assertion that the verdict was not unanimous. "There is no merit in this contention. The juror stated that it was her verdict. [Cits.]" *Person v. State*, supra. The only difference between that case and this is that here the juror gave a negative response to the poll question regarding her concurrence in the verdict reached in the jury room. Insofar as the concept of unanimity is concerned, however, no distinction can be drawn between partial and complete disagreement. If a juror only "partially" agrees with a verdict, then there is not unanimous agreement therewith. Thus, the *Person* decision clearly supports a holding that where, as here, the juror expresses unequivocal present agreement with the verdict returned in open court, any equivocation as to process heading to the verdict in the jury room does not require a reversal of the conviction. Under those circumstances, the defendant has not suffered any harm, since each individual juror has openly expressed concurrence in the verdict which was publicly announced. Here, as in *Person*, supra, "[t]he juror stated that it was her verdict."

Indeed, in *Hanson v. State*, supra at 568-569 (4) (b), this Court did not find any reversible error where the juror, having initially indicated that he "still [had] some questions in [his] mind," thereafter acknowledged his present agreement with the announced guilty verdict. If a trial court does not err in accepting a public verdict about which a juror "still" expresses doubts, then certainly it does not err

when it accepts a public verdict which a juror never questions. Despite any disapproval of the verdict ostensibly agreed to in the jury room, the record here shows without doubt that the twelfth juror agreed with the verdict finding Benefield guilty which was announced in his presence and before the court. Thus, the purpose of the jury poll to assure that the jury reached a unanimous verdict before entry of the judgment of conviction and imposition of the sentence was fully satisfied here.

The majority recognizes that today's decision is inconsistent with *Hanson* and *Person*, since it is forced to overrule both of those cases in order to reverse Benefield's convictions. I submit that *Hanson* and *Person* are the better-reasoned opinions and that, as controlling precedent, they mandate an affirmance of the holding of the Court of Appeals that no reversible error occurred here. If there was any possibility that the jury in this case never reached unanimous agreement as to Benefield's guilt, I would concur in the reversal of his convictions. Under the circumstances, however, it is clear that each and every juror found that he was guilty of the child molestation charges and publicly announced his or her agreement with those guilty verdicts in the courtroom. Thus, I am compelled to dissent, because the majority can justify today's decision only by the most hyper-technical elevation of the mere form that the jury poll should take over the actual substance sought to be achieved by that procedure.

DECIDED SEPTEMBER 13, 2004 —
RECONSIDERATION DENIED OCTOBER 12, 2004.

*Barry V. Smith, James C. Bonner, Jr., Bret E. Rudeseal, Sarah L. Gerwig*, for appellant.

*Leigh Patterson, District Attorney, Charles S. Cox, Assistant District Attorney*, for appellee.