## A09A2233. WESBY v. THE STATE.
### (685 SE2d 495)

ELLINGTON, Judge.

A Richmond County jury found Tyrone Wesby guilty of two counts of armed robbery, OCGA § 16-8-41 (a), and two counts of possession of a firearm during the commission of a crime, OCGA § 16-11-106 (b) (1). Wesby appeals from the denial of his motion for new trial, contending the trial court erred in denying his motion to suppress evidence, in refusing to suppress identification testimony, and in failing to require further jury deliberations after a juror expressed reservations about her verdict. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reveals the following relevant facts. During the evening of July 19, 2006, Wesby robbed two barbers in Jamaal's Barber Shop in Augusta. One of the barbers was cutting the hair of a three-year-old child when Wesby entered the shop, brandished a small chrome handgun at the barber, and demanded his money. After taking money from the first barber, Wesby pointed the pistol at the other barber and took his money. The robbery was witnessed by the child's godmother, who was sitting nearby. Although Wesby wore a bandana as a mask, all three witnesses recognized him from the neighborhood, having seen him several times walking to local stores, and they each positively identified him at trial as the robber. Wesby was known to them by the nickname "Shug."

The barbers described Wesby to the responding officers as having "twists" in his hair, and all three witnesses described him as wearing black pants, a red and black Dickies shirt, and a black and white bandana mask. After the officers left the shop, the barbers drove through the neighborhood looking for Wesby. A few hours later, they spotted him in a neighboring apartment complex, called the police, and pointed him out to the arresting officers. Shortly thereafter, an investigator obtained consent from Wesby's mother to search Wesby's room, where he found a pair of black pants, a red and black Dickies shirt, and a black and white bandana. The witnesses identified these items as the clothing worn by the robber.

1. Wesby contends that the trial court should have suppressed

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

the clothing seized from his room by the police pursuant to his mother's consent to search. Wesby argues that his mother, by giving consent to search only his bedroom, demonstrated that she did not possess common authority over the premises sufficient to validate the search. We disagree.

When reviewing a trial court's order on a motion to suppress where the facts are undisputed, as here, and there is no question regarding the credibility of witnesses, we apply a de novo standard of review to the trial court's application of the law to the facts. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Wesby has not included in the appellate record a transcript of the hearing on his motion to suppress. His entire argument hinges upon the fact that his mother gave the police consent to search only his room, not her entire apartment. The record reveals that Wesby was 17 years old at the time of the search. It is undisputed that he lived with his mother, the head of the household. There is no evidence that Wesby paid rent to his mother or that her access to his room was restricted in any way. Yet, Wesby asks this Court to infer from these facts that she lacked common authority over his room. This argument lacks merit. As we have explained:

> Permission to search may be obtained from one who possesses a common authority over or other sufficient relationship to the premises sought to be inspected. . . . The voluntary consent of the head of a household to the search of premises owned or controlled by such head of the household is sufficient to authorize a search of the premises without a search warrant.

(Footnotes omitted.) *Thomas v. State*, 290 Ga. App. 10, 13-14 (3) (a) (658 SE2d 796) (2008). Further,

> [e]ven if the son, living in the bosom of a family, may think of a room as "his," the overall dominance will be in his parents. Given the nature of the home as a family dwelling and the fact that the mother, as owner and head of the single-family household, designated what use, if any, could be made of the premises including the bedroom in question, we think it was reasonable to recognize that the mother had the authority to permit the inspection in her own right.

(Citations and punctuation omitted.) *State v. West*, 237 Ga. App. 185, 186 (514 SE2d 257) (1999). Because Wesby's mother had the authority to consent to the search of his room, id., the fact that she limited the search to his room cannot give rise to an inference that she

lacked authority to search his room. Wesby has failed to show that the trial court erred in denying his motion to suppress.

2. Wesby contends the trial court should have suppressed the identification testimony of the woman who witnessed the armed robbery because her identification was tainted by an impermissibly suggestive photographic lineup. Wesby argues that the lineup was suggestive because he was the only individual depicted with "twists" — spiky braids — in his hair, and that the barbers said the robber had "twists."

> Testimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "this is our suspect."

(Punctuation and footnotes omitted.) *Brooks v. State*, 285 Ga. 246, 248-249 (3) (674 SE2d 871) (2009).

The black and white photographic lineup depicts six black males of a similar age, build, and complexion, wearing similar attire. Each man has braids in his hair, and all of the braids are different — long, short, flat, raised, and spiky. While it is true that only Wesby had "twists," the photographic lineup does not depict him as the only man with a distinctive, braided hairstyle.

The witness testified that no one suggested that she select a particular photograph. Further, she testified that she did not notice the robber's hairstyle, but was, instead, focused on his eyes. Moreover, she said she was familiar with Wesby's face, having seen him in the neighborhood many times before, and had no doubt whatsoever about her identification of Wesby as the robber. Under these circumstances, even if Wesby's photograph was somewhat suggestive because of his unique hairstyle, the identification procedure was not so impermissibly suggestive as to have led the witness to the "all but inevitable identification" of Wesby as the perpetrator. See *Brooks v. State*, 285 Ga. at 249 (3). Consequently, the trial court did not err in admitting the witnesses' identification testimony.

3. Wesby contends the trial court should have instructed the jury to continue its deliberations after a juror made statements during

the poll of the jury that indicated the verdict was less than unanimous. "Where a poll of the jury discloses other than a unanimous verdict, the proper procedure is for the trial court to return the jury to the jury room for further deliberations in an effort to arrive at a unanimous verdict." (Citations omitted.) *Benefield v. State*, 278 Ga. 464, 465 (602 SE2d 631) (2004). Our review of the record, however, does not support Wesby's contention that a juror disclosed reservations about her verdict. It reveals only that a juror initially said the verdict was not hers but then immediately corrected herself to say that it was. Upon further questioning by the court, she reiterated that she agreed with the verdict, that it was her verdict in the jury room, and that it remained her verdict. Wesby's argument that the juror's initial "no" revealed disagreement about the verdict is based upon mere speculation. Moreover, given her subsequent affirmations of her verdict, the juror's initial "no" does not support an inference that the verdict was less than unanimous. Consequently, the trial court was not required to instruct the jury to continue its deliberations. See id.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 26, 2009.

*Peter D. Johnson*, for appellant.
*Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.