**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**May 5, 2015**

# In the Court of Appeals of Georgia

A15A0508. MOTON v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Earl Moton, II, on two counts of misdemeanor public indecency. On appeal, Moton contends that the evidence was insufficient to support his convictions and that the trial court erred in (1) refusing to sentence him as a first offender, (2) denying his motion for a continuance of the hearing on his motion for new trial, and (3) denying his motion for new trial, in which he argued that the jury verdict was not unanimous. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on May 16, 2013, Aquila Abdel-Quedus and her ten-year-old daughter went to the Stonecrest branch of the DeKalb County Public Library to meet a close family

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

friend, Amir Bin Yamin, who was there studying for a test. Shortly after her daughter sat down at a desk to use one of the library's computers, Abdel-Quedus noticed that a young man, later identified as Moton, appeared to be observing her daughter through the gaps in a book shelf. A few seconds later, Abdel-Quedus watched as Moton pulled his erect penis out of his pants and began masturbating.

Immediately, Abdel-Quedus alerted Bin Yamin to Moton's actions. But from his vantage point behind Moton, Bin Yamin did not see Moton's exposed penis. However, Bin Yamin did see that Moton was moving one of his arms back and forth near his waist and, thus, appeared to be masturbating. And upon confronting Moton, Bin Yamin also noticed that Moton's pants were open. Consequently, Bin Yamin informed one of the librarians, who then questioned Moton about his actions. In response, Moton claimed that his underwear had become bunched so he attempted to adjust himself, thinking no one would notice. Unpersuaded by this response, the librarian called a police officer, who further questioned Moton regarding the incident at the police station and received a similar explanation.

Thereafter, the State charged Moton, via accusation, with one count of public indecency by exposing his sexual organs in a lewd manner[2] and one count of public

[2] *See* OCGA § 16-6-8 (a) (2).

2

indecency by making a lewd appearance in a state of partial nudity.[3] And during the ensuing trial, Abdel-Quedus, Bin Yamin, the librarian, and the police officer testified about the incident. In addition, several witnesses, including Moton's father, testified as to Moton's good character, and Moton testified in his own defense. Nevertheless, at the conclusion of the trial, the jury found Moton guilty on both counts in the accusation.

Subsequently, Moton filed a motion for new trial, and the trial court scheduled a hearing. Then, approximately one week before the hearing, Moton filed a motion for continuance, arguing, *inter alia*, that he had not received a transcript of his trial. But finding that Moton had, in fact, already received an electronic copy of the transcript, the trial court denied Moton's motion. After Moton filed an amended motion for new trial, the court held the hearing on the motion as scheduled and, ultimately, denied it. This appeal follows.

1. Moton first contends that the evidence was insufficient to support his convictions on the two charges of public indecency. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer

---

[3] *See* OCGA § 16-6-8 (a) (3).

enjoys a presumption of innocence.[4] And, of course, in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[5] Thus, the jury's verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[6] With these guiding principles in mind, we turn now to Moton's specific claim of error.

Under OCGA § 16-6-8 (a), a person commits the offense of misdemeanor public indecency when he or she performs, in a public place, "[a] lewd exposure of the sexual organs"[7] or "[a] lewd appearance in a state of partial or complete nudity."[8] And here, Abdel-Quedus testified that she saw Moton pull his erect penis from his pants and begin to masturbate. This evidence alone was sufficient to prove that

---

[4] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[5] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt. 2781, 61 LE2d 560) (1979).

[6] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

[7] OCGA § 16-6-8 (a) (2).

[8] OCGA § 16-6-8 (a) (3).

Moton committed the offense of public indecency by a lewd exposure of his sexual organs and by a lewd appearance in a state of partial nudity.[9]

2. Moton also contends that the trial court erred in refusing to sentence him as a first offender under OCGA § 42-8-60. Again, we disagree.

It is well established that the decision of whether or not to sentence a defendant under the first-offender statute "lies entirely within the discretion of the trial court."[10] And absent some erroneous belief on the part of the trial court that the law does not permit first offender treatment, we "presume the trial court acted properly in imposing the sentence."[11] Indeed, to rebut this presumption there "must be a clear statement in

_____

[9] *See Douglas v. State*, 330 Ga. App. 549, 551 (1) (768 SE2d 526) (2015) (holding that sufficient evidence existed to support conviction for public indecency by a lewd exposure of sexual organs, when a witness noticed defendant masturbating on a bench outside of a shopping mall and could clearly see his exposed penis); *Whitfield v. State*, 259 Ga. App. 61, 61-62 (575 SE2d 899) (2002) (holding evidence was sufficient to support conviction for public indecency when, after an altercation in a parking lot, defendant "stood in front of the car, exposed his penis, shook it, and told [a woman] to suck it"); *see generally* OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact . . . .").

[10] *Freeman v. State*, 328 Ga. App. 756, 762 (5) (760 SE2d 708) (2014) (punctuation omitted); *accord Tew v. State*, 320 Ga. App. 127, 127 (739 SE2d 423) (2013).

[11] *Freeman*, 328 Ga. App. at 762 (5) (punctuation omitted); *see Graydon v. State*, 313 Ga. App. 580, 582 (holding that trial court acted within its discretion in denying defendant's request for first-offender treatment when there was no indication

the record that constitutes either a general refusal to consider such treatment or an erroneous expression of belief that the law does not permit the exercise of such discretion."[12]

In the case *sub judice*, the trial court initially expressed some doubt as to whether it could sentence Moton as a first offender after the jury returned a guilty verdict. However, after a brief recess, the trial court stated that based on defense counsel's position that first-offender treatment was within the court's discretion, the court would allow defense counsel to argue as to why first-offender treatment was appropriate. Then, following argument by defense counsel and the State's solicitor on the issue, the trial court prefaced sentencing by stating:

> Well, the cases make it clear that I have to exercise my discretion when these things are requested, and that is what I'm doing. That is why I'm giving you an opportunity to explain to me why because I am wanting to and I legitimately am committed to following the law as it is stated in this state. The law doesn't require me to give first offender status. It simply requires me to consider it, and I am considering it.

that trial court refused to consider request or erroneously believed that such was not permited).

[12] *McCullough v. State*, 317 Ga. App. 853, 853 (733 SE2d 36) (2012) (punctuation omitted); *accord Powell v. State*, 271 Ga. App. 550, 551-52 (610 SE2d 178) (2005).

The court then continued by noting that in light of the overwhelming evidence and Moton's arrogance, lack of remorse, and lack of credibility, it did not believe that first-offender treatment was appropriate. Consequently, the court sentenced Moton to ten days of incarceration with credit for one day served. Given these circumstances, the trial court's remarks during sentencing did not "indicate either a lack of awareness that the court had the discretion to sentence [Moton] under the first offender statute, that the court was applying a mechanical policy that prevented proper consideration of the request, or that there was an outright refusal to consider the request."[13] Accordingly, the trial court did not abuse its discretion in declining Moton's request for first-offender treatment.[14]

3. Moton further contends that the trial court erred in denying his motion for a continuance of the hearing on his motion for new trial. Yet again, we disagree.

---

[13] *McCullough*, 317 Ga. App. at 855; *see Steele v. State*, 270 Ga. App. 488, 492 (606 SE2d 664) (2004) (holding that court's announcement that it would deny first-offender status "[b]ased on the nature of the offense" did not indicate mechanical sentencing policy).

[14] *See McCullough*, 317 Ga. App. at 855-56 (holding that evidence showed that trial court's refusal to afford defendant first offender treatment was based on deliberate consideration of the case and sentencing options and, therefore, was not an abuse of discretion); *Graydon*, 313 Ga. App. at 581 (same).

Generally, the appellate courts of this State will not "reverse a trial court's decision to deny a motion for a continuance absent a showing of a clear abuse of discretion."[15] More specifically, a motion for a continuance of the hearing on motion for new trial is "addressed to the sound discretion of the trial judge, and in the absence of a clear showing to the contrary, it will be presumed that such discretion was not abused."[16] Importantly, to be entitled to a new trial based upon the denial of a motion for a continuance, a defendant has the burden of showing that "he was harmed by that denial."[17]

Here, as noted *supra*, approximately one week before the scheduled hearing on his motion for new trial, Moton filed a motion for continuance, arguing, *inter alia*, that he had not received a transcript of his trial. But in its order denying Moton's request for a continuance, the trial court noted that Moton had actually received an electronic copy of the transcript four days before requesting the continuance. Moreover, Moton had the burden of demonstrating that he was harmed by the trial

---

[15] *Geiger v. State*, 295 Ga. 648, 651 (3) (763 SE2d 453) (2014).

[16] *Graham v. State*, 107 Ga. App. 332, 333 (1) (130 SE2d 166) (1963); *see generally Boatwright v. State*, 91 Ga. 13, 13 (16 SE 101) (1892).

[17] *Geiger*, 295 Ga. at 651 (3) (punctuation omitted).

8

court's denial, and having reviewed the record, we cannot conclude that he has made such a showing. Thus, the trial court did not abuse its discretion in denying Moton's motion for a continuance.[18]

4. Finally, Moton contends that the trial court erred in denying his motion for new trial, arguing that a poll of the jury showed that the guilty verdict was not unanimous. Once again, we disagree.

Under Georgia law, the privilege of polling a jury in criminal cases is "the legal right of the defendant, and does not depend upon the discretion of the court."[19] The purpose of polling is to ensure that "each member of the jury assents to the verdict, and for the court to discern possible coercion."[20] Thus, a negative response to a poll question is "enough to raise the inference that the finding of the jury was not

---

[18] *See Columbus v. State*, 270 Ga. 658, 664-65 (4) (513 SE2d 498) (1999) (holding that trial court did not abuse its discretion in denying defendant's motion for a continuance when record showed that, contrary to defendant's contention, State did not fail to comply with discovery duties and that defendant failed to show that denial resulted in harm to his case).

[19] *Benefield v. State*, 278 Ga. 464, 466 (602 SE2d 631) (2004) (punctuation omitted); *accord Maddox v. State*, 233 Ga. 874, 876 (2) (213 SE2d 654) (1975).

[20] *Benefield*, 278 Ga. at 466.

concurred in by each of the jurors, and, this being true, there was no legal verdict."[21] Indeed, when a poll of the jury discloses that the jury was not a unanimous verdict, the proper procedure is for "the trial court to return the jury to the jury room for further deliberations in an effort to arrive at a unanimous verdict."[22] And it is not "incumbent upon counsel to move the court for further deliberations."[23]

Following the verdict in this matter, Moton requested that the trial court poll the jury, and the court agreed to do so. The first four jurors questioned all indicated that they freely and voluntarily agreed with the guilty verdict. The court then engaged in the following colloquy with Juror Five.

> The Court: "Juror [Five] was the verdict of guilty as to both counts your verdict when you were in the jury room?"
>
> Juror [Five]: "The first one was, yes, but not the second one."
>
> The Court: "And as to the second issue, did you vote to convict on the second count?"

---

[21] *Id.* (punctuation omitted); *accord Ponder v. State*, 11 Ga. App. 60, 61 (74 SE 715) (1912).

[22] *Benefield*, 278 Ga. at 465.

[23] *Id.* at 466.

Juror [Five]: "Yes."

The Court: "Is that your verdict now?"

Juror [Five]: "Yes."

The Court: "Is it freely and voluntarily made by you as you sit here now?

Juror [Five]: "Yes."

The Court: "So you are good with the verdict as it stands?

Juror [Five]: "Well, can you explain because —"

The Court: "You just need to answer the question."

Juror [Five]: "Yes."

On appeal, Moton argues that Juror Five's initial response to the trial court indicates that the verdict was not unanimous and, therefore, that the trial court erred by failing to instruct the jury to continue its deliberations. But while not entirely clear, the most logical interpretation of Juror Five's response to the court's first question shows that she may not have initially voted to convict on the second count at the

11

beginning of deliberations. Nevertheless, upon further questioning, she responded affirmatively when asked whether she *did* vote to convict (*i.e.*, in the past tense and, thus, in the jury room), whether she ultimately agreed with the verdict in its entirety, and whether she did so freely and voluntarily. And given her subsequent affirmations of the verdict, the juror's initial equivocation regarding the second count does not support an inference that the verdict was less than unanimous.[24] Accordingly, the trial court was not required to instruct the jury to continues its deliberations.

For all of the foregoing reasons, Moton's convictions are affirmed.

*Judgment affirmed. McFadden, J., concurs. Ellington, P. J., concurs in judgment only.*

---

[24] *See Wesby v. State*, 300 Ga. App. 597, 600 (3) (685 SE2d 495) (2009) (holding that trial court was not required to instruct the jury to continue deliberations because despite juror's initial indication that the verdict was not hers, she unequivocally affirmed the verdict in response to additional questions).