**THIRD DIVISION**
**ELLINGTON, P. J.,**
**MCFADDEN AND MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 5, 2016**

# In the Court of Appeals of Georgia

A15A1825. JONES v. THE STATE.

MERCIER, Judge.

Aaron Jones appeals his convictions for rape, aggravated child molestation, child molestation, and aggravated sodomy. Jones contends that the trial court abused its discretion when it denied his motion for a mistrial, and that the trial court erred by failing to merge his conviction for rape into his conviction for aggravated child molestation. Finding no error, we affirm.

1. In Jones's first enumeration of error, he argues that the trial court erred by denying his motion for a mistrial after a juror informed the trial court that the verdict of guilty was not her verdict. "The abuse of discretion standard applies to the review of the denial by the trial court of a motion for mistrial." *Underwood v. State*, 218 Ga.

App. 530, 534 (3) (462 SE2d 434) (1995) (citation omitted). We find no abuse of discretion on the part of the trial court.

The record shows that on November 16, 2012, after conducting a week long trial, the jury informed the court that a verdict had been reached after approximately three hours of deliberation. Upon receiving the signed and dated verdict form from the foreman, the court read the verdict in open court; Jones was found guilty on all four counts. The court proceeded to ask each juror three questions essentially: "Was that your verdict in the jury room?" "Was it freely and voluntarily given?" "Is it still your verdict?" The first five jurors polled answered all three questions in the affirmative, however when the court reached Juror 6 the reply was in the negative. Specifically:

The Court: Juror six, was that your verdict in the jury room?

Juror: No.

The Court: It was not?

Juror: No.

The Court: So that is not your verdict?

Juror: No.

After this brief exchange the trial court sent the jury out of the courtroom to speak with counsel for both the State and Jones.

Following a brief discussion both parties agreed that the court would first make inquiries of the jury foreman and then Juror 6 before making a determination regarding how to proceed. Outside the presence of the rest of the jury, the foreman expressed surprise at the answers of Juror 6. Furthermore, the foreman informed the court that all twelve jurors had taken part in deliberations, and that Juror 6 had not informed him in the jury room that she did not agree with the verdict.

When the foreman was escorted from the courtroom but before Juror 6 was brought in, counsel for Jones moved the court to declare a mistrial. The grounds as stated by Jones's counsel were that: "the alternates were brought back into the courtroom when the verdict was read." The court's reply was that it had not yet been established that the 12 original jurors were unable to reach a verdict. Counsel for Jones then agreed to have the court make further inquiries of Juror 6.

The court then spoke with Juror 6 outside the presence of the rest of the jury. When asked if prior to walking into the courtroom she had informed any of the other 11 jurors that she disagreed with the verdict, Juror 6 replied: "Throughout the

3

whole–this–throughout the whole debate." The court then inquired, "Was there any of the four counts that you agreed with the verdict or is it all of them you disagree with the verdict?" Juror 6 indicated that after discussions with another juror she "went ahead and agreed to about two of the charges." The court inquired further as to whether Juror 6 agreed with the verdict as given. She replied, "I disagree." When the court asked whether further deliberations would be of use, Juror 6 replied, "This is how I felt . . . when I was going through the whole evidence."

The trial court then sent Juror 6 out of the courtroom, but not to the jury room, and inquired of both attorneys how they wished to proceed. Counsel for Jones indicated that, "if she's saying that she does not think that further deliberations would change anything and you wanted to replace her with an alternate, that's when I would ask for a mistrial." Thus, defense counsel once again indicated that the motion for a mistrial was grounded in an objection to the use of alternate jurors, not in allowing further deliberations involving Juror 6. The court concluded that there was no legal reason to replace Juror 6 with an alternate, and decided to allow the jury to continue deliberations. Counsel for Jones stated in response, "I think the juror was very clear as to her reasons why she was voting not guilty. I don't think those reasons will change, but I will leave it with the Court." The court then denied Jones' motion for

4

a mistrial. After bringing the jury back in, the trial court re-read a jury instruction charging the jury to "decide this case for yourself" but to "never surrender an honest opinion in order to be congenial or to reach a verdict solely because of the opinions of the other jurors." After a break for lunch, the jury returned and continued deliberations around 3:00 p.m. After approximately 45 minutes of deliberations, the jury again informed the court a verdict had been reached. Once again the verdict was read, and Jones was found guilty on all four counts. The trial court polled the jury as to their individual verdicts, and all 12 jurors answered that they agreed with the verdict.

After receiving the verdict, the trial court removed the jury from the courtroom to mark the second verdict form to alleviate any confusion with the first verdict form the jury had returned. At this point the trial court inquired of both attorneys, "is there anything you want to put on the record relative to the return of this verdict on the four counts?" Counsel for Jones replied "No, your honor." The trial court then moved on to an unrelated issue.

"Where a poll of the jury discloses other than a unanimous verdict, the proper procedure is for the trial court to return the jury to the jury room for further deliberations in an effort to arrive at a unanimous verdict." *Benefield v. State*, 278 Ga.

464, 465 (602 SE2d 631) (2004)(citations omitted). See also *Larry v. State*, 266 Ga. 284, 287 (5) (466 SE2d 850) (1996); *Miller v. State*, 265 Ga. App. 402, 403 (2) (593 SE2d 943) (2004).

In the instant case, Juror 6 disclosed that the initial verdict of guilty was not hers, and consequently the verdict was not unanimous. The trial court then properly returned the jury to the jury room for more deliberations.

Jones argues that the polling of the jury was somehow coercive to Juror 6 and so a mistrial was warranted. For this proposition Jones relies on *Brasfield v. United States* 272 U. S. 448, 449 (1926), where the United States Supreme Court states "this Court condemned the practice of inquiring of a jury unable to agree, the extent of its numerical division." Id. at 449. Jones reliance on *Brasfield* is misplaced.

In *Brasfield* the jury had failed to reach a verdict, and so after an extended period of deliberation the trial judge polled the jury to see how it was divided numerically. The intent of the trial court was apparently to discover how close the jury was to reaching a verdict. Id. Under that set of circumstances it is clear how the polling of a jury before a verdict is reached may in fact be coercive. However, those circumstances do not exist in the instant case.

6

In Jones's case, the trial court polled the jury after a verdict had been announced, not before. The trial court's polling ensured that the verdict was unanimous so that the rights of Jones were protected. It is well settled in Georgia law that "[i]n criminal cases the privilege of polling a jury is the legal right of the defendant." *Maddox v. State*, 233 Ga. 874, 876 (2) (213 SE2d 654) (1975) (citation omitted). See also *Tilton v. State*, 52 Ga. 478, 479 (1874); *Williams v. State*, 63 Ga. 306 (1879). Ultimately, the outcome of the first polling of the jury was that the verdict was not unanimous. In so polling the jury, the trial court far from prejudicing Jones, protected his rights, in that a juror who stated the guilty verdict was not her own was discovered, and the jury was appropriately sent back for further deliberations.

Jones argues that, looking at the totality of the circumstances, this practice was in some way coercive. After examining the totality of the circumstances, we disagree. Jones argues that two coercive elements in particular were present: the identity of the dissenting juror was known, and the trial court ordered the jury to continue deliberating after the dissenting juror indicated she disagreed with the verdict. However, a careful consideration of the record does not make it clear that the juror was in fact dissenting. Instead, when asked whether she agreed with the verdict of

guilty on any of the counts, Juror 6 replied that she had "agreed to about two of the charges." At no time did Juror 6 ever state that further deliberations would be futile, or that her opinion was unlikely to change. The trial court, instead of inquiring into the reasoning of the juror, appropriately returned the jury to the jury room for further deliberations. Jones's counsel did not object to this procedure, nor did she renew the motion for a mistrial when the verdict was eventually read. Most tellingly, when polled for the second time, Juror 6 affirmed that the verdict was hers as given in the jury room, was freely and voluntarily given, and was still her verdict.

Secondly, the identity of a dissenting juror will presumably always be known to the rest of the jury. In this case, the fact that the judge and counsel for both the State and Jones that Juror 6 was the juror who had disagreed with the verdict does not add any coercive element. Had Juror 6 still disagreed with the verdict of guilty on all four counts, she could have said so upon the second polling of the jury in much the same way she did after the verdict was announced the first time. She declined to do so, and answered all questions in the affirmative. Under the totality of the circumstances we do not find that Juror 6 was coerced into abandoning an honest conviction. The trial court behaved appropriately when it chose to return Juror 6 to

the jury for more deliberations. See *Benefield,* supra. Accordingly, the trial court's denial of Jones's motion for mistrial was not an abuse of discretion.

2. Jones second enumeration of error is that the trial court erred when it failed to merge Jones's conviction for rape (Count 1) into his conviction for aggravated child molestation (Count 2). In considering the question of merger we utilize the required evidence test, which provides that: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Drinkard v. State*, 281 Ga. 211, 215 (636 SE2d 530) (2006) (footnote omitted). We find that the counts were predicated on separate incidents and so each provision does require proof of a fact that the other does not, and therefore the trial court did not err when if did not merge Count 1 with Count 2.

To establish the crime of rape, the State proved that Jones had carnal knowledge of "a female who is less than ten years of age." OCGA § 16-6-1(a)(2). To establish the crime of aggravated child molestation, the State proved that Jones did an immoral or indecent act to or in the presence of or with a child under the age of 16 years with the intent to arouse and satisfy the sexual desire of himself, and that said

9

act injured the child. OCGA § 16-6-4. Count 2 alleged Jones did so by "inserting his penis into the vaginal area" of the victim.

Jones argues that Count 1 did not require proof of any fact that Count 2 did not. In addition, Jones argues, because the trial court did not specifically find that the jury's verdict as to Count 1 and Count 2 referred to separate events this would be grounds for merger. In considering this question "the important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged." *Drinkard v. State*, 281 Ga. 211, 216 (636 SE2d 530) (2006) (footnote omitted).

Jones argues that both Count 1 and Count 2 allege carnal knowledge of the victim. Carnal knowledge is defined by OCGA § 16-6-1(a) (2) as "when there is any penetration of the female sex organ by the male sex organ." As Count 1 alleges carnal knowledge, and Count 2 alleges conduct identical to the definition of carnal knowledge, this contention is correct. Further, Jones alleges that both counts require proof that the victim was less than ten years of age. Count 2 as charged required proof the that victim was less than 10 years of age, whereas the Statute only requires proof

10

the victim is less that 16. Count 1 required proof that the victim was less than ten. So, Count 1 required the same or less evidence than that of Count 2.

Count 2 requires an additional proof of harm, but Jones argues the evidence necessary to prove Count 1 is already contained in Count 2. Therefore, Count 1 was established by proof of less than all the facts required to prove Count 2. Accordingly, Jones argues, the counts must merge.

Jones argument is correct if both counts are based on the same incident. If both counts were based on a single incident, then the required evidence test would not be satisfied and the counts would merge. However, if the counts were based on separate incidents of conduct they do not merge. *Carver v. State*, 331 Ga. 120, 122 (4) (769 SE2d 722) (2015).

The trial court stated at sentencing that it had evidence before it of "at a minimum, two different incidents, two different occurrences, Count 4, on May 1, Counts 1, 2, and 3 sometime between the summer of 2009 and April 30th, 2010." Jones contends that while the trial court found that the jury based the conviction on the count of aggravated sodomy on an event from May 1, 2010, the three other counts were based on a single incident with an indeterminate date between July 2009 and April 2010. Thus, Jones argues, Count 1 and Count 2 are based on one incident and

11

must merge. However, it is not clear from the record that the jury based its verdicts on the two counts on a single incident.

Based on the evidence introduced at trial there was sufficient evidence for the jury to conclude that Count 1 and Count 2 were based on separate incidents. The State presented evidence that Jones had carnal knowledge of the victim on more than one occasion. On direct examination about a specific incident of assault perpetrated by Jones the victim was asked, "Has this ever happened before?" She replied, "Yes, ma'am." During the forensic interview the victim was asked how often this type of incident had occurred, and she answered over "30 times." On direct examination the interviewer indicated that the number 30 was not to be taken literally, but signified "a substantial number" of times in the mind of the child. Furthermore, the registered nurse who examined the victim noted that a physical examination of the child showed two healed injuries to the victim's hymen that were indicative of trauma such as penetration.

In sum, the State presented substantial evidence that Jones had carnal knowledge of the victim on more than one occasion. In its order denying Jones's Motion for New Trial, the trial court pointed to the fact that the jury could have concluded from the evidence presented that there were separate factual incidents on

12

which to base guilty verdicts on both Count 1 and Count 2. The trial court did not err by concluding that the verdicts on Count 1 and Count 2 were based on separate incidents. Because each count was for a separate and distinct incident of conduct, they do not merge for purposes of sentencing. Accordingly, the trial court did not err in failing to merge Count 1 and Count 2.

*Judgment affirmed. Ellington, P.J., and McFadden, J., concur*.